UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JENA LATIF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:17-cv-00655-JRS-MPB |
| | ) | |
| FCA US LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**Entry on Defendant's Motion for Summary Judgment**

Plaintiff Jena Latif ("Latif") brings this suit against Defendant FCA US LLC ("FCA"), alleging race, gender and disability discrimination, and retaliation claims under the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), the Americans with Disabilities Act, 42 U.S.C. § 12101 ("ADA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). FCA now seeks summary judgment on all of Latif's claims. In April 2018, the Court granted Latif's counsels' motion to withdraw. Latif now proceeds *pro se*.

FCA's Motion for Summary Judgment (ECF No. 47) is fully briefed and ripe for decision. After carefully reviewing the motion, response, reply, and relevant law, the Court concludes that the motion should be **GRANTED**.

### I. Summary Judgment Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant

is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome-determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005).

In ruling on a motion for summary judgment, the Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011). After the moving party demonstrates the absence of a genuine issue for trial, the responsibility shifts to the non-movant to "go beyond the pleadings" and point to evidence of a genuine factual dispute precluding summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in her favor on a material question, then the court must enter summary judgment against her." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

## II.   Background

FCA hired Latif, an African American woman, in 1995 (ECF No. 48-2 at 4), and promoted her to Team Leader in 2010. (ECF No. 48-1, Ex. A ¶ 6.) Team Leaders are appointed and removed by the Joint Team Leader Selection Committee ("Selection Committee"), which comprises representatives from FCA and the International

Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the "Union"). (ECF No. 48-1, Ex. A ¶ 10.) As a Team Leader, Latif managed between nine and eleven team members and assisted team members with their daily job duties. (ECF No. 48-1, Ex. A ¶ 7.)

In January 2014, members of Latif's team complained about her performance as Team Leader and requested a private meeting with the Union representative on the Selection Committee to discuss Latif's removal from the position. (ECF No. 48-1, Ex. A ¶ 12.) Team member complaints comprised remarks about Latif's poor leadership skills, such as:

- "I think she's just not cut out to be a [Team Leader]."
- "Latif can't drive a truck, has difficulties getting things done timely."
- "Has difficulty doing Team Leader job [duties]."
- "[Latif has] [n]o understanding of the jobs."

(ECF No. 48-1 at 8-12.)

The Union representative communicated the team members' complaints to Latif's supervisors. (ECF No. 48-1, Ex. A ¶ 14.) The supervisors discussed the complaints with Latif and offered her additional job training. (ECF No. 48-1, Ex. A ¶ 15.) Latif received additional training from January 2014 to September 2014. (ECF No. 48-1, Ex. A ¶ 18.) In October 2014, one of Latif's supervisors recommended that she be removed from the Team Leader position. (ECF No. 48-1, Ex. A ¶ 19.) In response to this supervisor's recommendation, FCA conducted additional interviews of Latif's team members, who had already expressed concerns about Latif's job

3

performance. ([ECF No. 48-1](#), Ex. A ¶ 20.) During these interviews, Latif's team members elaborated on her poor job performance, and in April 2015, the Selection Committee removed Latif as Team Leader and demoted her back to a team member. ([ECF No. 48-1](#), Ex. A ¶¶ 6, 21-23.)

In October 2014 or November 2014, Latif filed an internal human resources complaint, alleging race and gender discrimination and harassment by one of her immediate supervisors. ([ECF No. 48-1 at 23](#).) In September 2015, Latif filed her first Charge of Discrimination (Charge No. 470-2015-02974) ("First Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") against FCA, alleging that she was harassed on the basis of race and gender. Latif further alleged in her First Charge that FCA demoted her from the Team Leader position because of the 2014 internal harassment claim she had filed. ([ECF No. 48-1 at 23](#).) The EEOC closed its file on the First Charge in December 2015, and after determining that its investigation was unable to establish any violations of the applicable statutes, notified Latif of her right to sue. ([ECF No. 48-1 at 26](#).)

In April 2016, Latif filed her second EEOC Charge (Charge No. 470-2016-00616) ("Second Charge") against FCA. Latif's Second Charge contains allegations that FCA harassed and retaliated against her for filing the First Charge in September 2015. ([ECF No. 48-1 at 28](#).) Latif further alleged that this "ongoing harassment" and "retaliation" caused her to suffer from "stress," in violation of the ADA. ([ECF No. 48-1 at 28](#).) In this Second Charge, Latif gave two examples of the alleged harassment: (1) an October 28, 2015 "write-up" and one-day unpaid suspension and (2) a

4

November 12, 2015 "write-up" and three-day unpaid suspension. ([ECF No. 48-1 at 28](#).) In each case, Latif filed a grievance through her Union representative, resulting in (1) FCA paying Latif for the missed day and removal of the discipline from her record in the first matter ([ECF No. 48-1](#) Ex. A ¶¶ 24-30 and [ECF No. 48-1 at 18-19](#)), and (2) FCA's withdrawal of the discipline altogether in the second matter. (ECF No 48-1 at 21.)

On December 5, 2016, the EEOC closed its file on Latif's Second Charge—again determining that it was unable to conclude that violations of the applicable statutes had occurred—and notified Latif of her right to sue. ([ECF No. 48-1 at 31](#).) On March 3, 2017, Latif filed suit based on her Second Charge, alleging that FCA took an adverse employment action against her because of her race and gender, and in retaliation for her complaints of discrimination made in the First Charge, when it (1) demoted her from Team Leader to team member in April 2015 and (2) subjected her to less favorable terms and conditions of her employment, as set forth in her First Charge. ([ECF No. 1](#).) Latif also alleges in her complaint that FCA harassed and retaliated against her for filing the First Charge, resulting in stress, hospitalization and counseling; and, that FCA discriminated against her by subjecting her to disparate treatment because of her actual or perceived disability as set forth in her Second Charge. ([ECF No. 1 at 3](#); [ECF No. 30 at 1](#).)

### III. Discussion

Latif alleges that FCA discriminated against her on the basis of race, gender, and disability, and that FCA retaliated against her for engaging in a protected activity.

Her race and gender discrimination claims are brought under Title VII and Section 1981, while her disability discrimination claim is brought under the ADA. Her retaliation claim is brought under Section 1981 alone. FCA moves for summary judgment on each of Latif's claims.

### A. Latif's Response

Latif in her response identifies two disputed issues of fact which she deems genuine and material: (1) she was removed from the Team Leader position "without cause" and (2) FCA did not follow the proper "Team Leader [r]emoval [p]rocess" in demoting her from the position. (ECF No. 64 at 3.) Whether true or not, the issues of whether FCA followed proper procedure in demoting her and whether that demotion was carried out with or "without cause" are not material or otherwise supportive of any element of Latif's claims under the relevant statutes. As such, Latif fails in her response, as well as in any other part of the record, to identify evidence that would "affect the outcome of the suit under the governing law[s]" or that create a triable issue of fact on any of her claims. *Hampton,* 561 F.3d at 713. The only evidence Latif provides the Court is a sworn statement she filed with the National Labor Relations Board ("NLRB") (ECF No. 64-4), but this statement does not even relate to her race, gender, disability, or protected activity claims. As to her retaliation claim, this sworn statement also does not support Latif's claim, but rather corroborates FCA's argument that Latif was demoted from the Team Leader position because of poor job performance. For these reasons and the reasons that follow, summary judgment is proper on each of Latif's claims.

6

### B. Title VII and Section 1981 Claims

Title VII prohibits employers from "discriminat[ing] against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also prohibits an employer from acting in retaliation against employees who oppose any practice made unlawful under Title VII. 42 U.S.C. § 2000e-3(a). Section 1981 prohibits race discrimination and retaliation as well. 42 U.S.C. § 1981(a); *Tank v. T-Mobile USA, Inc.*, 758 F.3d 800, 805 (7th Cir. 2014).

Courts apply the same standards to analyze claims under Title VII and § 1981, *Mintz v. Caterpillar Inc.*, 788 F.3d 673, 679 (7th Cir. 2015), namely "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enterps., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). A plaintiff establishes a prima facie case of discrimination or retaliation under Title VII or Section 1981 by presenting evidence that would allow a reasonable jury to find on each claim that: (1) she is a member of a protected class; (2) she was meeting the employer's legitimate employment expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than a similarly situated non-protected class member. *See Farrell v. Butler Univ.*, 421 F.3d 609, 613 (7th Cir. 2005); *see also Harper*, 687 F.3d at 309. Latif is an African American woman and is therefore a member of a protected class. The Court notes, however, that as relates to Latif's Title VII and Section 1981 claims for race and gender discrimination,

7

no reasonable finder of fact could conclude that Latif was meeting her employer's legitimate employment expectations. Indeed, each of the instances of which Latif complains of being discriminated against have to do with acts or consequences of her not meeting FCA's employment expectations. For this reason alone, Latif has failed to make out a prima facie case of discrimination under both Title VII and Section 1981.

Furthermore, the only adverse employment action Latif suffered in this case was being removed as Team Leader, and this was done at the urging of her own team members, and after Latif was given the benefit of remedial training, yet still failed to improve her job performance. The other complained of conduct Latif alleges to be "adverse" to her, including FCA's assessment of write-ups and employment lay-offs, are not adverse employment actions. After all, "an adverse employment action must be materially adverse, not merely an inconvenience or a change in job responsibilities." *Hilt–Dyson v. City of Chicago,* 282 F.3d 456, 465 (7th Cir. 2002). An adverse employment action "significantly alters the terms and conditions of the employee's job," *Stutler v. Ill. Dep't of Corr.,* 263 F.3d 698, 703 (7th Cir. 2001), and none of the matters Latif complains of did. S*ee Grube v. Lau Indus.,* 257 F.3d 723, 728 (7th Cir. 2001) (altered work hours, negative performance evaluations, unfair reprimands); *Oest v. Ill. Dep't of Corr.,* 240 F.3d 605, 613 (7th Cir. 2001) (oral and written reprimands); *Bell v. EPA,* 232 F.3d 546, 555 (7th Cir. 2000) (trivial matters). Not only were these disciplinary matters of which Latif complains not adverse employment actions, but each instance of discipline against her was undone.

8

Moreover, FCA still employed her, albeit in a demoted role, at the time she filed her lawsuit.

Latif also fails to adduce any evidence that she was treated less favorably than a similarly situated non-protected class member with respect to any of FCA's conduct of which she complains. Latif merely presents the Court with unsupported allegations that she was treated less favorably than "[w]hite male Team Leaders," alleging that she was disciplined for having an unclean office, while a white colleague was not disciplined for the same conduct. (ECF No. 1 at 3; ¶ 14.) Far from providing evidence in support of this allegation, Latif later testified at deposition that she had no personal knowledge of whether this white male Team Leader was ever disciplined for having an unclean office. (ECF No. 48-2 at 13; 135:8-10). She therefore fails, for all of the foregoing reasons, to establish a prima facie case for race and gender discrimination under Title VII and Section 1981.

Likewise, Latif fails to establish a prima facie case for retaliation under Section 1981. Latif alleges in her Second Charge of Discrimination that FCA retaliated against her for filing her First Charge of Discrimination, *see Poullard v. McDonald, 829 F.3d 844 (7th Cir. 2016)* (holding that the filing of an EEOC complaint constitutes a protected activity for purposes of a retaliation claim), but provides no evidence to support this claim. (ECF No. 48-1 at 28.) Latif also alleges in her sworn NLRB statement that she was retaliated against because she filed and then dropped an internal Human Resources complaint against one of her supervisors, stating that she was removed from the Team Leader position "after [she] dropped [her internal

9

harassment] complaint with [FCA's Human Resources Department]." (ECF No. 64-4 at 2.) However, after Latif was removed from the Team Leader position, her supervisor issued her a letter, which explained that Latif was demoted because she "could not properly perform [her] work," because she "retained less than half of the information [she] had been trained on," and because it took Latif too long "to learn the jobs in the department." (ECF No. 64-4 at 2.) Absent any evidence to the contrary, and Latif has presented none, the Court cannot plausibly infer that Latif was demoted for any reason other than her poor job performance of record. Latif therefore fails to establish that she suffered any adverse employment action in retaliation for engaging in a protected activity, and summary judgment is proper on her Section 1981 retaliation claim.

### C. ADA Claim

The ADA prohibits discrimination against an individual based on her disability. 42 U.S.C. § 12112(a). The ADA provides in relevant part, that no employer "shall discriminate against a qualified individual with a disability *because of* the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (2009).

Latif's ADA claim fails for at least two reasons. First, Latif fails to prove she is disabled as required by the statute, and thus fails to establish a prima facie case under the ADA. Second, Latif fails to allege that FCA discriminated or retaliated against her *because* of her purported disability. Latif instead alleges that FCA's

10

discrimination and/or retaliation *caused* her purported disability. (ECF No. 48-1 at 28.)

Latif alleged in her Second Charge of Discrimination that she suffers from a disability. She further alleged that FCA's "ongoing harassment" and "retaliation" caused her to suffer from "stress," which the court presumes to be her purported disability, in violation of the ADA. (ECF No. 48-1 at 28.) However, "[m]erely having a physical injury or medical condition is not enough" to be disabled under the ADA. *Powers v. USF Holland, Inc.*, 667 F.3d 815, 819 (7th Cir. 2011). While stress could be a qualifying ADA disability in some circumstances, Latif does not present the Court with enough evidence to plausibly infer the alleged stress she suffered substantially limited a major life activity such that it would qualify under the ADA. *See* 42 U.S.C. § 12102(1) (defining "disability" in part as "a physical or mental impairment that substantially limits one or more major life activities"); *Powers*, 667 F.3d at 819. Latif's fleeting references to her "stress related issues" and her "hospitalization" are insufficient to permit a reasonable factfinder to conclude that she was disabled. Even if she proved a disability, Latif's claim would still fail because, instead of alleging that she was retaliated against *because* of her disability, Latif alleges that FCA's harassment and retaliation *caused* her stress and subsequent hospitalization. (ECF No. 48-1 at 28.) Accordingly, Latif has failed to establish a prima facie case for discrimination and/or retaliation under the ADA and summary judgment is proper on this claim.

## IV. Conclusion

For any and all of the foregoing reasons, Defendant's Motion for Summary Judgment ([ECF No. 47](#)) is **GRANTED**. Final judgment will be issued under separate order.

Date: 2/11/2019

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JENA LATIF
3267 North Davis Road
Kokomo, IN 46901

Zachary A. Ahonen
JACKSON LEWIS PC (Indianapolis)
zachary.ahonen@jacksonlewis.com

Michael W. Padgett
JACKSON LEWIS PC (Indianapolis)
padgettm@jacksonlewis.com

Melissa K. Taft
JACKSON LEWIS PC (Indianapolis)
melissa.taft@jacksonlewis.com